**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anna Chabrowski, et al., | No. CV-17-03867-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Bank of New York Mellon Trust Company NA, et al., | |
| Defendants. | |

This is a *pro se* lawsuit brought by a married couple, Anna and Darius Chabrowski ("Plaintiffs"), against three defendants: the Bank of New York Mellon Trust Company, N.A. f/k/a The Bank of New York Trust Company, N.A. ("BONY"), Bayview Loan Servicing, LLC ("Bayview"), and Zieve, Brodnax & Steele, LLP ("ZBS") (collectively, "Defendants"). In a nutshell, Plaintiffs allege that, even though they paid off the promissory note on their home in 2006, Defendants began pursuing improper collection and foreclosure efforts against them in 2016. As remedies, they seek (1) a declaration that Defendants are barred, for statute-of-limitations reasons, from foreclosing on their home and (2) compensatory and punitive damages.

Pending before the Court are four motions: (1) BONY and Bayview's motion to dismiss Plaintiffs' first amended complaint (Doc. 33), (2) BONY's unopposed "Request for Judicial Notice in Support of Motion to Dismiss" (Doc. 35), (3) Plaintiffs' motion to disqualify ZBS from serving as BONY's counsel in this matter (Doc. 41), and (4) Plaintiffs' amended motion for leave to file a second amended complaint (Doc. 58). As

explained below, the Court will dismiss ZBS as a party under Rule 21, because Plaintiffs have not alleged diversity of citizenship as to ZBS. In addition, the Court will grant the motion to dismiss, grant the request for judicial notice, deny Plaintiffs' motion to disqualify counsel, and deny Plaintiffs' amended motion for leave to file a second amended complaint.[1] These actions will dispose of all of Plaintiffs' claims.

**BACKGROUND**

A. Procedural History

Plaintiffs are a married couple who reside in Arizona. (Doc. 32 ¶ 6.) In September 2017, Plaintiffs filed a *pro se* lawsuit against BONY in Arizona state court.[2] (Doc. 1 at 8.) In October 2017, BONY removed this case to federal court based on diversity jurisdiction. (Doc. 1 at 2.)

On June 7, 2018, Plaintiffs filed a first amended complaint ("FAC"). (Doc. 32.) The FAC adds two new defendants, Bayview and ZBS. (Doc. 32 at 3-4.) The FAC does not, however, properly allege the existence of diversity jurisdiction as to these two defendants. Among other things, the FAC does not allege the citizenship of all of ZBS's partners, owners, and members,[3] seems to suggest that ZBS is based in Arizona, and mistakenly cites Arizona law as providing a jurisdictional basis for this case to be in federal court. (Doc. 32 at 3-4.)

---

[1] Although BONY requests oral argument on the motion to dismiss, the Court will deny the request because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings); LRCiv. 7.2(f) (same).

[2] This is not Plaintiffs' first *pro se* lawsuit. *See, e.g., Chabrowski v. Lawson*, 2013 WL 4757517 (N.D. Cal. 2013) (dismissing § 1983 claims asserted by Derek Chabrowski against private citizens, their lawyer, and a state-court judge); *Chabrowski v. Cretan*, 2013 WL 675025, *1 (N.D. Cal. 2013) (dismissing Derek Chabrowski's *pro se* lawsuit asserting civil rights claims "against the Honorable Clifford V. Cretan . . . following Judge Cretan's issuing of an injunction against Plaintiff related to his alleged harassment of a former business associate"); *Chabrowski v. Litwin*, 2017 WL 3530373, *1 (D. Ariz. 2017) (denying *pro se* motion filed by Derek Chabrowski: "The motion is frivolous and therefore denied."); *Chabrowski v. Bank of America NA*, 2018 WL 4095118 (D. Ariz. 2018) (granting summary judgment to defendants).

[3] *See, e.g., Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) (partnerships and limited liability companies are citizens of every state in which one of their partners, owners, or members is a citizen).

- 2 -

The FAC asserts a variety of claims arising from Defendants' efforts, beginning in 2016, to pursue collection and foreclosure efforts against Plaintiffs. The relief sought is two-fold: (1) a declaration that Defendants are barred, for statute-of-limitations reasons, from foreclosing on Plaintiffs' home, which is located in Anthem, Arizona, and (2) compensatory and punitive damages.

On June 21, 2018, BONY filed a motion to dismiss the FAC under Rule 12(b)(6) (*see* Doc. 33) and a request for judicial notice pertaining to the motion to dismiss (*see* Doc. 35). Bayview subsequently filed a joinder. (Doc. 44.)

In July 2018, Plaintiffs filed an opposition to the motion to dismiss (*see* Doc. 37) and a non-opposition to the request for judicial notice (*see* Doc. 38). Afterward, BONY timely filed a reply in support of the motion to dismiss. (Doc. 39.)

In August 2018, Plaintiffs filed a motion to disqualify ZBS from representing BONY in this matter. (Doc. 41.) BONY filed a timely response (*see* Doc. 42) and Plaintiffs filed a timely reply (*see* Doc. 45).

On October 9, 2018, Plaintiffs filed a motion for permission to file a second amended complaint. (Doc. 47.) On October 17, 2018, BONY and Bayview filed an opposition, arguing the motion should be denied because (1) Plaintiffs failed to comply with Local Rule 15.1(a), (2) Plaintiffs' proposed amendment (*i.e.*, correcting BONY's true corporate name) was unnecessary because BONY had already made an appearance under its correct name and subjected itself to the Court's jurisdiction, and (3) granting leave to amend at such a late juncture (more than a year after the lawsuit was initiated) would result in undue hardship and delay. (Doc. 49.)

On October 31, 2018, this case was reassigned to the undersigned judge. (Doc. 53.)

On December 7, 2018, the Court issued an order denying Plaintiffs' motion for leave to file a second amended complaint based on non-compliance with Local Rule 15.1(a). (Doc. 55.)

On December 21, 2018, Plaintiffs filed an amended motion for leave to file a second amended complaint. (Doc. 58.) This time, they complied with Local Rule 15.1(a) by

providing a redlined copy of their proposed new complaint. (Doc. 59.) It appears the only proposed changes would be (1) to insert the phrase "f.k.a Bank of New York Trust Company" after "Bank of New York Mellon Trust Company," (2) to assert a new allegation concerning BONY's registration to do business in Arizona, (3) to assert that the address of BONY's parent company is in California, not Arizona, (4) to include new allegations about ZBS's activities in Arizona and California, and (5) to replace the acronym BONY with "BNY Trust." There are no changes to Plaintiffs' legal theories or claims for relief.

B. Factual Assertions in the FAC

Below, the Court has attempted to summarize, in chronological order, the allegations in the FAC relevant to Plaintiffs' asserted claims:

In 2005, Plaintiffs hired a builder to construct a home for them in Anthem, Arizona. (Doc. 32 ¶¶ 18-20.) They paid $150,000 to the builder and borrowed the remaining balance, $185,000, from a company called Preferred Home Mortgage Company ("Preferred Home"), which was "a financing arm" of the builder. (*Id.*) The promissory note was executed in April 2006. (*Id.*)

On a date not specified in the FAC, but "before the house was even built, and before [Plaintiffs] closed on the loan," Preferred Home sold the $185,000 mortgage to Bank of America. (*Id.* ¶ 21.)

In mid-to-late 2006, "Plaintiffs paid of[f] the mortgage with Preferred Home" by using their own savings and money they had obtained from an equity line of credit from ETRADE Financial. (*Id.* ¶ 22.) Plaintiffs then carried that line of credit as their first mortgage. (*Id.*)

In 2007, Preferred Home went bankrupt. (*Id.* ¶ 50.) Plaintiffs allege that Preferred Home "failed to fully satisfy [the loan] . . . before Preferred Home Mortgage went bankrupt," thus making the mortgage "defunct." (*Id.*)

In 2009, despite the fact that Plaintiffs had already paid off the promissory note, Bank of America accelerated the loan and scheduled a foreclosure. (*Id.* ¶ 23.) Bank of America then cancelled the foreclosure effort, "after discovering it an error," and paid

- 4 -

$2,000 to Plaintiffs in consequential damages. (*Id.*)

"[S]ometime in 2009," BONY acquired an interest in Plaintiffs' mortgage from Preferred Home pursuant to an Assignment of Deed of Trust. (*Id.* ¶¶ 30, 46.) The Assignment was signed by "Aida Duenas." (*Id.* ¶ 46.) Plaintiffs allege that "Aida Duenas" is a robo-signer who lacked authority to assign any interest to BONY because Preferred Home went bankrupt in 2007 and "Aida Duenas" is a false name that has reappeared in litigation concerning robo-signing efforts by other banks. (*Id.* ¶¶ 48-50.) Therefore, BONY knew or had reason to know the Assignment of Deed of Trust was invalid. (*Id.* ¶ 51.) Regardless, BONY recorded the Assignment of Deed of Trust. (*Id.*)

On February 16, 2016, Plaintiffs began receiving mail from Bayview, which was attempting to collect mortgage payments on behalf of Bank of America. (*Id.* ¶ 24.) Bayview then corrected itself and attempted to collect the payments on behalf of BONY. (*Id.*) Bayview had purchased servicing rights to Plaintiffs' mortgage loan knowing the loan was defunct. (*Id.* ¶ 25.) In the correspondence received by Plaintiffs, Defendants represented themselves as debt collectors, giving notices such as "WE ARE ATTEMPTING TO COLLECT DEBT, AND ANY INFORMATION WILL BE USED FOR THAT PURPOSE." (*Id.* ¶ 56.) Moreover, Defendants sent Plaintiffs a Statement of Breach and Non-Performance that stated: "the monthly installment of principal and interest became due on 4/1/2009, including late charges and all subsequent monthly installments of principal and interest." (*Id.* ¶ 38.) Plaintiffs refused to pay, so Bayview threatened Plaintiffs with a non-judicial foreclosure. (*Id.* ¶ 25.)

On July 13, 2017, BONY sent Plaintiffs a "notice of acceleration" of their loan. (*Id.* ¶ 40.) The notice from BONY was invalid because the loan had never been decelerated or reinstated after Bank of America accelerated it in 2009. (*Id.* ¶ 39.)

Plaintiffs then filed an action in the Maricopa County Superior Court. (*Id.* ¶ 31.) On October 17, 2017, the court entered a preliminary injunction "enjoining the trustee sale identified under TS No. 17-47529 with the Bank of New York Mellon." (*Id.*) Plaintiffs allege that Defendants have not complied with the preliminary injunction. (*Id.* ¶ 32.)

**DISCUSSION**

I. ZBS

Before addressing the motion to dismiss, the Court must determine whether it has jurisdiction. *Moore v. Maricopa Cty. Sheriff's Office*, 657 F.3d 890, 895 (9th Cir. 2011) ("[T]he Supreme Court has specifically instructed that a district court must first determine whether it has jurisdiction before it can decide whether a complaint states a claim.").

As noted, this case was initially filed in state court against a single defendant, BONY. After BONY removed it to federal court, invoking the Court's diversity jurisdiction, Plaintiffs filed the FAC, which identifies ZBS as an additional defendant. The FAC does not, however, allege ZBS's citizenship. This is improper. *Hobe' v. U.S. Dep't of Educ.*, 2009 WL 1699269, *4 (D. Ariz. 2009) (under 28 U.S.C. § 1332(a), a plaintiff seeking to "invoke diversity as the basis for this Court's jurisdiction over his claims . . . must include in his complaint a statement of: (a) his own state citizenship; (b) the citizenship of [each defendant]; and (c) an amount in controversy in excess of $75,000").

Moreover, to the extent the FAC contains anything in the ballpark of allegations concerning ZBS's citizenship, it suggests ZBS would be considered a citizen of Arizona. Among other things, it alleges that ZBS "claims to be the duly appointed trustee of the deed of trust in their capacity as [a] member of the [Arizona] State Bar under A.R.S. 33-803(A)(2)" (*see* Doc. 32 ¶ 10) and that ZBS "listed their address at an abandoned office at 112 N Central Ave, Suite 425" (*id.*), which is an Arizona address. The FAC's certificate of service also identifies a different Arizona address for ZBS. (Doc. 32 at 19.)

Although dismissal of the entire case is an option when this sort of jurisdictional defect arises,[4] courts have discretion under Federal Rule of Civil Procedure 21 to cure the defect by simply dismissing the non-diverse party. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150 (9th Cir. 1998) (citations omitted) (recognizing the "Rule 21 power . . . to dismiss a

---

[4] *See, e.g., Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, 1095 (9th Cir. 2004) ("Diversity jurisdiction under § 1332 requires complete diversity of citizenship . . . . In the absence of [complete diversity], the district court did not have subject matter jurisdiction and should have dismissed the action.").

non-diverse party as long as doing so does not prejudice the remaining parties" and noting that "[o]therwise, . . . if the suit were dismissed altogether for lack of subject matter jurisdiction, the plaintiff would simply refile against the defendants in the district court without the non-diverse parties"). This approach is permissible only if the party being dismissed isn't considered an indispensable party. *See, e.g., Sams v. Beech Aircraft Corp.*, 625 F.2d 273, 277 (9th Cir. 1980) ("Rule 21 grants a federal district . . . court the discretionary power to perfect its diversity jurisdiction by dropping a nondiverse party provided the nondiverse party is not indispensable to the action under Rule 19."); *Eggs 'N Things Int'l v. ENT Holdings LLC*, 2011 WL 676226, *4 (D. Haw. 2011) (citation omitted) ("Rule 21 provides the court this flexibility because the alternative of dismissing the action for lack of subject matter jurisdiction would result in the plaintiff simply refiling the action without the non-diverse party, which would waste the time and resources of all involved. Accordingly, Rule 21 allows 'practicality [to prevail] over logic' so that the court 'may dismiss a dispensable, non-diverse party in order to perfect retroactively the district court's original jurisdiction.'").

"Whether a non-party is 'indispensable' is determined by application of Federal Rule of Civil Procedure 19." *Confederated Tribes of Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1498 (9th Cir. 1991) "Rule 19(a) provides a two-pronged inquiry for determining whether a party is 'necessary.'" *White v. Univ. of Cal.*, 765 F.3d 1010, 1026 (9th Cir. 2014). "First, the court must determine whether complete relief can be afforded if the action is limited to the existing parties. Second, the court must determine whether the absent party has a 'legally protected interest' in the subject of the action and, if so, whether the party's absence will 'impair or impede' the party's ability to protect that interest or will leave an existing party subject to multiple, inconsistent legal obligations with respect to that interest." *Id.* (citation omitted).

ZBS does not qualify as a necessary party under this test. ZBS is the law firm representing BONY and Bayview in this matter. (As discussed below, ZBS is not a trustee to Plaintiffs' Deed of Trust, as evidenced by the "Substitution of Trustee" the Court has

judicially noticed.) If Plaintiffs were to prevail on all of their claims against BONY and Bayview, they would obtain the "complete relief" they are seeking in this action (*i.e.*, declaratory relief concerning the statute of limitations and monetary damages). Moreover, ZBS has no legally protected interest in the subject of the action and ZBS's absence won't leave BONY or Bayview subject to multiple, inconsistent legal obligations. Consequently, ZBS is a dispensable, non-diverse party that will be dismissed under Rule 21.

II. <u>Request for Judicial Notice</u>

BONY and Bayview have asked the Court to take judicial notice of seven documents for purposes of ruling on the motion to dismiss. (Doc. 35.) Three of the documents (Exhibits A, B, and C) are title documents related to Plaintiffs' property in Anthem. The next three documents (Exhibits D, E, and F) are from Plaintiff Anna Chabrowski's Chapter 13 bankruptcy case. The final document (Exhibit G) is a minute entry that was issued by the state-court judge in this case before BONY removed the case to federal court. Notably, Plaintiffs do not oppose the judicial-notice request. (Doc. 38 at 1 ["Plaintiffs . . . DO NOT oppose [the] Request for Judicial Notice . . . as the Defendant(s)' Exhibits actually support Plaintiffs' [position]."].)

Courts regularly take judicial notice of the type of documents at issue here. *See, e.g., Jacobsen v. HSBC Bank USA, N.A.*, 713 Fed. App'x 679, 680 (9th Cir. 2018) ("The district court did not abuse its discretion by taking judicial notice of the title documents."); *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("[W]e 'may take notice of proceedings in other courts . . . within . . . the federal judicial system, if those proceedings have a direct relation to matters at issue.'") (citation omitted); *Griffin v. Green Tree Servicing, LLC*, 166 F. Supp. 3d 1030, 1040 (C.D. Cal. 2015) (taking judicial notice of documents "that concern the chain of title on [plaintiff's] mortgage" and summarizing cases that similarly took judicial notice of title documents). Accordingly, and given Plaintiffs' non-opposition to the request, the Court will take judicial notice of all seven documents, with the proviso that it cannot—at the motion-to-dismiss stage—take judicial notice of any disputed facts contained within these records.

*See, e.g., Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-90 (9th Cir. 2001). Specifically:

▪ <u>Trust Documents</u>: Exhibit B is the original "Deed of Trust" for Plaintiffs' property in Anthem. It was executed on April 5, 2006, denotes the "Borrower" as "Darius J. Chabrowski and Anna Chabrowski, Husband and Wife," denotes the "Lender" as Preferred Home, and reflects the amount of the note as $185,000. (Doc. 35-1 at 4-20.) Next, Exhibit A is a document entitled "Corporation Assignment of Deed of Trust Arizona," which reflects that, in August 2011, the deed of trust was transferred to Bank of America. (Doc. 35-1 at 2.) Finally, Exhibit C is a document entitled "Corrective Assignment of Deed of Trust," which reflects that, in August 2012, the deed of trust was transferred to BONY. (Doc. 35-1 at 22-23.)

The only "fact" within these documents the Court will decline to judicially notice is the validity of Exhibit C (the 2012 assignment to BONY). This is because Plaintiffs dispute whether Aida Duenas had authority to execute the assignment. (Doc. 32 ¶¶ 46-51.)

▪ <u>Bankruptcy Documents</u>: Exhibit D is a filing in *In re Chabrowski*, 2:16-bk-01180-MCW (Bankr. Ariz.)—specifically, BONY's objection to the confirmation of Anna Chabrowski's Chapter 13 Plan. BONY objected to the plan because it failed to provide for payment to BONY, as a secured creditor, on the mortgage on Plaintiffs' Anthem property. (Doc. 35-1 at 25-65.) Exhibit E contains two minute entries from the bankruptcy case. (Doc. 35-1 at 67-72.) The first minute entry shows that, during a hearing on January 31, 2017, Anna Chabrowski argued she did not owe a debt to BONY because "the loan has been paid off" and the bankruptcy court overruled this argument, concluding that "evidence may be needed that shows that the loan was paid off." (Doc. 35-1 at 68-69.) The second minute entry shows that, during a hearing on February 15, 2017, in response to Anna Chabrowski's statement that "she does not wish to amend her plan and include [BONY]," the bankruptcy court dismissed her bankruptcy case. (Doc. 35-1 at 71.) Finally, Exhibit F is a Memorandum Decision issued by the bankruptcy court on March 24, 2017. (Doc 35-1 at 74-80.)

Although the Court is taking judicial notice of Exhibits D-F, the Court does not agree with BONY and Bayview's contention (Doc. 33 at 7-8) that these documents are helpful for *res judicata* purposes. The bankruptcy court did not rule, on the merits, that Anna Chabrowski owed a debt to BONY. During the January 2017 hearing, the bankruptcy court merely noted that this issue was disputed and that further evidentiary development might be needed. Although the court subsequently dismissed Anna Chabrowski's bankruptcy case, it appears this dismissal was based on her failure to comply with court orders, not based on a merits resolution of the disputed issue.

▪ Court Order Issued Before Removal: Exhibit G is a minute entry issued by the Maricopa County Superior Court on October 17, 2017, before this case was removed to federal court. In it, the court "enjoin[ed] the trustee sale identified under TS No.: 17-47529 with the Bank of New York Mellon Trust, N.A. scheduled for October 18, 2017." (Doc. 35-1 at 82-83.)

Although the Court is taking judicial notice of Exhibit G,[5] the Court does not agree with Plaintiffs' arguments concerning the significance of this document. The injunction merely barred Defendants from completing a trustee's sale of the Anthem property. It appears Defendants have complied—no trustee's sale has yet occurred. Thus, there is no merit to Plaintiffs' allegation that Defendants are "violating the preliminary injunction order." (Doc. 32 ¶ 72.)

III. Motion to Dismiss

A. **Legal Standard**

"[T]o survive a motion to dismiss, a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556

---

[5] The Court also could consider Exhibit G without converting the motion to dismiss into a motion for summary judgment because the FAC "necessarily relies" on the preliminary injunction. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) ("A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion."). All three factors are satisfied here.

U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1144-45 (citation omitted). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal,* 556 U.S. at 679-80. The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted). It is important to note that "[*p*]*ro se* complaints are to be construed liberally and may be dismissed for failure to state a claim only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Barrett v. Belleque*, 544 F.3d 1060, 1061-62 (9th Cir. 2008) (citation omitted).

B. **Analysis**

In Count 1 of the FAC, Plaintiffs seek a declaration that "Defendants are barred from conduc[t]ing [a] trustee sale due to Arizona's Statute of Limitations." (Doc. 32 ¶¶ 33-42; *see also id.* ¶ 3 ["Plaintiffs seek judgment of the Court declaring the substitute of trustee, the assignment of deed of trust, and notice of trustee sale as unenforceable in light of [Arizona's statute-of-limitations provisions,] A.R.S. § 12-548 and 33-816."].) This claim is premised upon the allegation that Bank of America accelerated Plaintiffs' loan in 2009 and, because the loan was never decelerated, the six-year statute of limitations established by A.R.S. § 12-548 has already expired. (Doc. 32 ¶¶ 23, 33.)

In their motion, BONY and Bayview argue that Bank of America could not have accelerated the loan in 2009 because Bank of America did not even acquire any interest in Plaintiffs' loan until 2011, as evidenced by Exhibit A to the request for judicial notice. (Doc. 33 at 5.) They also claim the "continuous breach theory" is applicable, under which each missed payment by Plaintiffs created its own cause of action, and therefore the statute of limitations has not expired. (*Id.* at 3-5.) In their response, Plaintiffs do not make a meaningful effort to address these arguments, other than to reassert in conclusory fashion

that the acceleration occurred in 2009. (Doc. 37 at 6 ["Plaintiffs cannot remove their claims [that] the Bank of America already accelerated the alleged debt in 2009, as it is part of public record."].)

The Court will dismiss Count 1 because Plaintiffs have not alleged sufficient facts to state a plausible claim that Bank of America accelerated their loan in 2009, causing the statute of limitations to begin to run. The FAC does not allege any facts regarding how Bank of America accelerated the loan or why Plaintiffs believed the loan was accelerated, and Plaintiffs have stipulated to the judicial notice of documents showing that Bank of America didn't even obtain an interest in their loan until 2011. Under these circumstances, Plaintiffs have not pleaded "factual content that allows the court to draw the reasonable inference" that the statute of limitations began running in 2009. *In re Fitness Holdings*, 714 F.3d at 1144 (citation omitted).

In Claim 2 of the FAC, entitled "False Documents," Plaintiffs assert a claim under A.R.S. § 33-420(A) premised on the notion that "Aida Duenas," the person who signed the document assigning Bank of America's interest in Plaintiffs' loan to BONY, was actually a robo-signer. (Doc. 32 ¶¶ 43-51.)

In their motion, BONY and Bayview argue this claim fails as a matter of law because (1) Plaintiffs never made a written demand to release or correct the challenged document, which is a mandatory prerequisite to relief under Arizona law, *see* A.R.S. § 33-420(C); (2) the Arizona false-recording statute only applies to certain types of documents and doesn't apply to the documents at issue here, *see Schayes v. Orion Fin. Grp., Inc.*, 2011 WL 3156303, *6 (D. Ariz. 2011); and (3) the alleged misrepresentations were immaterial, *see Sitton v. Deutsche Bank Nat'l Tr. Co.*, 311 P.3d 237 (Ariz. Ct. App. 2013). (Doc. 33 at 6-7.) In their response, Plaintiffs make no effort whatsoever to address these arguments.

The Court will dismiss Count 2. As an initial matter, Plaintiffs' failure to address the arguments presented in the motion to dismiss "is an independent basis to dismiss." *Wilkinson v. Wells Fargo Bank, N.A.*, 2012 WL 869285, *3 (D. Ariz. 2012) (citing LRCiv

7.2(i)).[6] The Court also concludes Claim 2 fails under the *Iqbal/Twombly* plausibility standard because it provides no facts to support the conclusory assertion that Aida Duenas is a robo-signer. *See e.g., Nottage v. Bank of New York Mellon*, 2012 WL 5305506, *6 (D. Hawai'i 2012) (gathering cases dismissing "robo-signing" allegations and stating that "conclusory assertions of 'robo-signing' fail to state a plausible claim"). Indeed, the FAC contains a citation (*see* Doc. 32 at ¶ 47) to a judicial opinion from Maine suggesting Aida Duenas is a real person who was employed by Mortgage Electronic Registration Systems. *Bank of America, N.A. v. Greenleaf*, 96 A.3d 700, 706 (Me. 2014).

In Count 3 of the FAC, entitled "Misrepresentation," Plaintiffs assert a state-law tort claim premised on the notion that "Defendants acted deceptively and under false pretenses [by] misrepresenting themselves as Debt Collector[s]" as that term is defined by the Fair Debt Collection Practices Act ("FDCPA"). (Doc. 32 ¶¶ 52-60.) They seek both declaratory relief (*see* Doc. 32 at 17 [seeking a "Declaration that Defendants misrepresented themselves as Debt Collector [sic] under 15 U.S.C. 1692a(6)"]) and (2) compensatory damages arising from "having to defend from false foreclosure, in addition to harassment at hands of Defendants['] agents continuously threatening foreclosure . . . ." (*see* Doc. 32 ¶¶ 59-60).

In their motion, BONY and Bayview acknowledge they aren't debt collectors under the FDCPA. (Doc. 33 at 8-9.) Nevertheless, they seek dismissal under Rule 9 because Count 3 doesn't allege, with any specificity, "when, where, or how" they purportedly held themselves out as debt collectors. (*Id.*) In their response, Plaintiffs don't address this

---

[6] Defendants argue A.R.S. § 33-420(A) doesn't apply where, as here, the document containing the allegedly false statement is an assignment, not the original deed of trust. *Wilkinson*, 2012 WL 869285 at *4 ("A.R.S. § 33–420(a) . . . applies to documents purporting to create an interest, lien, or encumbrance such as a *lis pendens*, mechanics lien, or the deed of trust itself, rather than an assignment[] of mortgages."). Although Plaintiffs did not address this argument in their response to the motion to dismiss, the Court independently found an unpublished Arizona Court of Appeals decision that seems to reach the opposite conclusion. *Huff v. Mason*, 2013 WL 4507920, *3 (Ariz. Ct. App. 2013) ("Defendants argue that liability under [A.R.S. § 33-420(A)] exists only for recorded documents that purport to *create* an interest in real property. . . . Th[is] analysis of A.R.S. § 33–420(A), however, ignores the statute's plain and unambiguous language.). Without adversarial briefing, the Court will not resolve this issue.

argument in any meaningful way—they argue, in conclusory fashion, that their initial allegations were sufficient and request, in the alternative, leave to file a second amended complaint with more details. (Doc. 37 at 2.)

The Court will dismiss Count 3 based on non-compliance with Rule 9(b). This rule requires a party alleging fraud to "state with particularity the circumstances constituting fraud." The allegations "must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). "The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.* (citation omitted).

Here, Plaintiffs fail to allege who made the representations, when the representations were made, and why the representations were false. Plaintiffs claim that "Defendants represented themselves as Debt Collector[s]" (*see* Doc. 32 ¶ 56), but Defendants are three separate entities. Plaintiffs do not specify which Defendant made the misrepresentation, whether all three Defendants each made the same misrepresentation, or whether Plaintiffs merely attribute the misrepresentation to all three Defendants. Plaintiffs also fail to allege when the misrepresentations were made, simply stating they occurred "[o]n multiple occasions." (*Id.*)

Additionally, Plaintiffs do not allege any injury that is traceable to Defendants' alleged misrepresentation of themselves as debt collectors. Although Plaintiffs allege they "suffered damages in having to defend from false foreclosure" (Doc. 32 ¶ 59), this injury has no causal connection to the alleged misrepresentation that Defendants were debt collectors. Failure to allege an injury that is "fairly traceable to the defendant's allegedly unlawful conduct" is a proper basis to dismiss under Rule 12(b)(6). *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) (citation omitted) ("A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."); *MAI Sys. Corp. v. UIPS*, 856 F. Supp. 538, 540 (C.D. Cal. 1994) (citation omitted) ("Failure to properly allege standing is a ground for dismissal under Rule 12(b)(6).").

The Court also will deny Plaintiffs' request to attempt to cure the issues in Count 3 by filing a second amended complaint. Although Plaintiffs requested a chance to cure in their response to the motion to dismiss, their request was notably vague. Moreover, while the motion to dismiss was pending, Plaintiffs attempted to file a second amended complaint, which doesn't contain any new details concerning the supposed misrepresentations or an injury that is fairly traceable to the supposed misrepresentations. These circumstances suggest that any further opportunity to cure the issues would be futile. *Resident Minors of City and Cty. of San Francisco v. Harris*, 482 Fed. App'x 293, 294 (9th Cir. 2012) ("The district court did not abuse its discretion in denying . . . leave to amend . . . because the[ ] alleged wrongs do not have a 'fairly traceable causal connection' to defendants' alleged [wrongdoing]."); *Chodos v. W. Publishing Co.*, 292 F.3d 992, 1002 (9th Cir. 2002) (citation omitted) ("[W]hen a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is 'particularly broad.'").

In Count 4 of the FAC, entitled "Breach of Fiduciary Duty," Plaintiffs assert that Defendants violated their fiduciary duties to Plaintiffs by (1) not complying with Arizona's foreclosure statutes, (2) "self dealing," (3) having a conflict of interest, and (4) violating the Maricopa County Superior Court's preliminary injunction. (Doc. 32 ¶¶ 61-73.)

In their motion, BONY and Bayview argue this claim fails because (1) "[i]t is well settled in Arizona that a mortgage lender does not owe a fiduciary duty to a borrower," *see Valley Nat'l Bank of Phoenix v. Elect. Dist. No. 4*, 367 P.2d 655, 662 (Ariz. 1961); (2) Arizona law does not require a company to register as an Arizona corporation, or maintain a registered agent in Arizona, before seeking to foreclose; (3) Plaintiffs' conflict-of-interest theory "is not a recognized tort or claim in Arizona, nor is it supported by any plausible facts"; and (4) the violation-of-court-order claim fails because no trustee sale took place after the state court issued its order. (Doc. 33 at 9-10.) In their response, Plaintiffs concede that BONY doesn't owe any fiduciary duties to them and seem to argue that Claim 4 is only being asserted against ZBS. (Doc. 37 at 5-6.)

The Court will dismiss the breach of fiduciary duty claim as it pertains to BONY and Bayview, both on the merits[7] and based on Plaintiffs' clarification that Claim 4 is only being asserted against ZBS (which, as noted above, has been dismissed under Rule 21).

IV. Motion to Disqualify

Plaintiffs move to disqualify ZBS from representing BONY in this matter. (Doc. 41.) They allege that ZBS has a conflict of interest because it is the trustee established by the Deed of Trust. (*Id.* at 3.)

BONY argues that ZBS is a law firm, not the trustee under the Deed of Trust. (Doc. 42 at 2.)[8] Additionally, BONY argues that Plaintiffs must prove they have suffered an "injury in fact" and prejudice to succeed in removing ZBS as opposing counsel. Last, BONY argues that Plaintiffs simply fail to satisfy the high burden for disqualifying ZBS as opposing counsel.

The Court "appl[ies] state law in determining matters of disqualification." *In re Cty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000). In Arizona, motions to disqualify are "view[ed] with suspicion." *Gomez v. Superior Court*, 717 P.2d 902, 905 (Ariz. 1986). "[T]he moving party [must] show sufficient reason why an attorney should be disqualified from representing his client." *Alexander v. Superior Court*, 685 P.2d 1309, 1313 (Ariz. 1984).

Plaintiffs have failed to carry this burden. Plaintiffs are incorrect that ZBS is the trustee established by the Deed of Trust, as evidenced by the "Substitution of Trustee" the

---

[7] *See, e.g., Urias v. PCS Health Sys., Inc.*, 118 P.3d 29, 35 (Ariz. Ct. App. 2005) ("A commercial contract creates a fiduciary relationship only when one party agrees to serve in a fiduciary capacity."); *Meyer v. One West Bank, F.S.B.*, 91 F. Supp. 3d 1177, 1184 (C.D. Cal. 2015) (explaining that a mortgage servicer "certainly did not owe her the type of legal duty of loyalty comparable to that owed by an officer or employee to a private entity").

[8] BONY requests the Court take judicial notice of the "Substitution of Trustee," recorded on July 14, 2017 in the Maricopa County Recorder's Office. The document "substitutes Joseph J. Tirello Jr. . . as Trustee under said Deed of Trust . . . ." (Doc. 42-1.) Plaintiffs do not oppose judicial notice but argue that "Joseph Tirello Jr. is not an independent trustee, as falsely claimed by ZBS but an employee and practicing attorney at ZBS." (Doc. 45 at 2.) For the same reasons that the Court has judicially noticed other trust documents, and because Plaintiffs do not contest the validity of the "Substitution of Trustee," the Court will judicially notice that Joseph J. Tirello, Jr.—not ZBS—is the trustee.

Court has judicially noticed. Additionally, Plaintiffs don't identify how ZBS is materially limited from representing BONY under Arizona Ethical Rule 1.7. The speculative assertion that ZBS is likely to put its recovery ahead of its client is insufficient. Finally, the Court is not persuaded there is even an appearance of impropriety here.

V.  Motion for Leave to File Second Amended Complaint

Plaintiffs have moved for leave to file a seconded amended complaint ("SAC"). Plaintiffs claim they "have made very little change to the first amended complaint because the second amended complaint is in respect to resolving issues of misnamed or improperly identified parties only." (Doc. 58 at 2, emphasis in original.)

The Court will deny Plaintiffs' request to file the SAC. The proposed changes in the SAC do nothing to cure the deficiencies identified in this order.

Nor will the Court allow Plaintiffs to make additional efforts to amend the complaint. "When considering a motion for leave to amend, a district court must consider whether the proposed amendment results from undue delay, is made in bad faith, will cause prejudice to the opposing party, or is a dilatory tactic." *Chodos*, 292 F.3d at 1002. Here, Plaintiffs' attempts to amend their complaint in piecemeal fashion, even before the Court could rule on Defendants' motion to dismiss, appear to be dilatory tactics to avoid foreclosure on their Anthem property. Plaintiffs also had the benefit of participating in meet-and-confer sessions during which opposing counsel "conferred with Plaintiffs as to each cause of action and the corresponding deficiencies." (Doc. 33 at 2 n.1). Yet Plaintiffs refused to amend the FAC to address those deficiencies, causing Defendants to file the motion to dismiss that is now before the Court. (Doc. 33.) The motion documented why the FAC was deficient. (*Id.*) Plaintiffs filed a response brief (Doc. 37), but before the Court could rule, Plaintiffs moved the Court to amend the FAC (Doc. 47, refiled as Doc. 58). None of the deficiencies identified in Defendants' motion to dismiss were remedied. (Doc. 58.) Under these circumstances, further amendment would be futile. *Chodos*, 292 F.3d at 1002 (citation omitted) ("[W]hen a district court has already granted a plaintiff

///

leave to amend, its discretion in deciding subsequent motions to amend is 'particularly broad.'").

Accordingly,

**IT IS ORDERED** that Plaintiffs' claims against ZBS (Doc. 32) are **DISMISSED** under Rule 21.

**IT IS FURTHER ORDERED** that BONY's and Bayview's motion to dismiss (Doc. 33) is **GRANTED**.

**IT IS FURTHER ORDERED** that BONY's and Bayview's unopposed request for judicial notice (Doc. 35) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' motion to disqualify counsel (Doc. 41) is **DENIED.**

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

Dated this 7th day of January, 2019.

Dominic W. Lanza
United States District Judge